FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 FEB 17  AM 11: 36

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JAMES FREDERICK SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 104-170 |
| | ) |
| RUSSELL CANTERBURY and | ) |
| MATT BAXLEY, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants in this action filed under Title 42, United States Code, Section 1983 have submitted a motion for summary judgment. Doc. 43. Plaintiff, then proceeding pro se, filed a response on January 9, 2006. Doc. 50. Plaintiff subsequently secured counsel and filed a supplemental response to the summary judgment motion on February 10, 2006. Doc. 57. For the reasons that follow, the Court recommends that defendants' motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of defendants, and that this civil action be **CLOSED**.

## I. BACKGROUND

On July 31, 2003, defendant Canterbury, a deputy with the Columbia County Sheriff's

Department, went to plaintiff's residence to serve an arrest warrant on plaintiff.[1] Def. Ex. A ¶ 5. Canterbury spoke to plaintiff through the locked door of plaintiff's residence, but plaintiff refused to allow Canterbury to enter the residence. Id. ¶ 6. Canterbury then called for backup, and defendant Baxley, another deputy, responded. Canterbury and Baxley met with plaintiff's wife, who lived with plaintiff and who provided defendants with a key to plaintiff's residence and permission to enter it. Id. ¶ 7.

Canterbury then entered plaintiff's residence and observed plaintiff fleeing out of a window. Canterbury ordered plaintiff not to leave and announced himself as a police officer. Plaintiff nevertheless exited the window and was pursued by Baxley to his vehicle. Id. ¶ 10. According to defendants' version of the facts, Baxley put his arm inside the vehicle to prevent plaintiff from escaping, and plaintiff slammed the door on Baxley's arm. Plaintiff locked his vehicle, and Baxley ran to his own vehicle in anticipation of plaintiff's flight. Id. ¶ 12.

Canterbury subsequently arrived at plaintiff's vehicle and ordered plaintiff to leave the vehicle. According to defendants, plaintiff refused Canterbury's order and moved the vehicle back, striking Canterbury in the leg. Id. ¶ 14. Defendants contend that plaintiff then began moving his vehicle toward Canterbury, who had drawn his firearm and continued to order plaintiff to exit his vehicle. Id. ¶ 16. Plaintiff, according to defendants, struck Canterbury again on the leg with his vehicle, causing Canterbury to lose his balance and become caught on the vehicle, which then dragged him. Canterbury discharged his firearm

---

[1] The arrest warrant arose out of alleged violence by plaintiff against his wife and was accompanied by a temporary protective order.

2

in the direction of plaintiff in response to plaintiff's actions. Id. ¶ 19.

Canterbury then fell away from the vehicle, and plaintiff, according to defendants, continued to move the vehicle toward an open road. Id. ¶ 20. Plaintiff eventually stopped the vehicle and exited on defendants' orders. Plaintiff, having been shot when Canterbury discharged his weapon, was transported to the hospital for treatment. Id. ¶ 21.

Plaintiff's version of the facts differ significantly. He concedes that he fled his residence and entered his vehicle, but he denies hitting Canterbury with the vehicle. According to plaintiff, "Canterbury tried to kick out plaintiff's driver's side car window and caused himself to fall." Pl. Ex. C. Plaintiff states that he did not hear Canterbury command him to stop when Canterbury drew his firearm. Id. Canterbury shot plaintiff, according to plaintiff's version of the facts, after plaintiff began moving his vehicle forward with Canterbury trying to enter it. Id.

On November 19, 2003, a grand jury sitting in Columbia County indicted plaintiff on charges of misdemeanor obstruction of a law enforcement officer, second degree criminal damage to property, aggravated assault, and family violence battery. Plaintiff pleaded guilty to obstruction and second degree criminal damage to property; the other charges were dismissed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Applicable substantive law identifies which facts are material in a given case.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929

---

[2] For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III. ANALYSIS

Defendants contend that plaintiff's complaint should be dismissed because plaintiff's success in this action would imply the invalidity of his state court conviction. A Section 1983 damages claim that calls into question the lawfulness of a prior conviction or sentence "does not accrue until the conviction or sentence has been invalidated." Heck v. Humphrey, 512 U.S. 477, 489 (1994). The Supreme Court likened such claims to common law tort actions for malicious prosecution, which historically have required the plaintiff to allege and prove the termination of the prior criminal proceeding in his favor as an element of his claim. Id. at 484-86. Thus, the Supreme Court held

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that

5

> relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87.

According to the Heck Court, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . ." Id. at 487. Thus, plaintiff's complaint in this case should be dismissed if a judgment in his favor would necessarily imply the invalidity of his conviction or sentence.

Plaintiff pleaded guilty to obstructing a police officer, a violation of Official Code of Georgia Annotated, Section 16-10-24(a), which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Defendants contend that if plaintiff were to prove here that Canterbury's use of force constituted an unlawful discharge of his official duties, the finding would necessarily imply the invalidity of plaintiff's prior conviction for obstruction.

The Court agrees. Georgia courts have consistently recognized the "lawful discharge" element of the obstruction offense. E.g., Adams v. Georgia, 589 S.E.2d 269, 270 (Ga. App. 2003). If plaintiff were successful in proving that Canterbury's use of force was unlawful in that it was not justified by plaintiff's flight, plaintiff will have implicitly negated the "lawful discharge" element. Cf. Cummings v. City of Akron, 418 F.3d 676 (6th Cir. 2005) (finding that Heck rule barred excessive force claim where plaintiff had been convicted of assault because successful excessive force claim would negate element of

6

assault charge); Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996) (holding plaintiff's claim barred by Heck where plaintiff convicted of battery alleged excessive force, which would imply self-defense justification and negate element of battery conviction).

Plaintiff contends that if he "were to prevail in his claim for excessive force, his conviction for misdemeanor obstruction would not be invalidated, as it is supported by actions of the plaintiff from the beginning of the underlying incident, when he fled for example, to its end." Doc. 57 at 2. The obstruction offense, however, was based on the ongoing conduct of plaintiff and defendants. While plaintiff's act of obstruction began before he entered his vehicle, his criminal conduct did not end until he surrendered to defendants.[3] The elements of obstruction had not yet been consummated when plaintiff entered his vehicle because defendants were still discharging their duty to arrest plaintiff in a lawful manner and defendant was still fleeing from them.

Plaintiff cites the Eleventh Circuit's unpublished opinion in Wells v. Cramer, No. 04-11703, 2005 WL 3196630 (11th Cir. Nov. 30, 2005), for the proposition that a plaintiff can prevail in an excessive force claim without implicating the rule in Heck. In Wells, the plaintiff claimed that officers assaulted him after his arrest. The court held that, "[t]o the extent that [plaintiff's] complaint alleged an excessive use of force *after he was arrested*, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying convictions and is not *Heck*-barred." Id. (emphasis added). Unlike the plaintiff's allegation in Wells, plaintiff here does

---

[3] If plaintiff had taken his obstruction charge to trial, the allegedly unlawful conduct of Canterbury would be a defense available to negate the "lawful discharge" element of the crime. The fact that plaintiff's flight began before the alleged use of excessive force would not have prevented plaintiff from raising it as a defense to the obstruction charge.

7

not allege a post-arrest excessive use of force. He instead asserts that Canterbury's use of force in the course of arrest, during which time his act of obstruction occurred, was unlawful. Thus, Wells provides no help for plaintiff.

The Court notes that the plain language of Georgia's obstruction statute requires "lawful discharge of [a police officer's] official duties," or the discharge of an official duty in a lawful manner. Not only must the officer's duty be lawful (e.g., an arrest must be supported by probable cause), but the officer's *performance* of his duty must be lawful (e.g., he must not use excessive force in effecting an arrest). While Georgia courts apparently have not had occasion to recognize these dual requirements of the obstruction statute,[4] the plain language of the statute itself creates them. "It is well established that 'when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.'" Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)). The word "lawful" in the obstruction statute's text modifies "discharge," not "duty." If the Georgia legislature were only concerned that the officer's duty be lawful, then it presumably would have written the statute so that "lawful" modified "duties" rather than "discharge." Thus, the Court concludes that, to obtain an obstruction conviction, the State must show not only that a police officer performed a lawful duty, but that he performed his duty in a lawful manner.

---

[4]Georgia courts have focused their analyses on whether the officer's duty itself is lawful, rather than whether the duty was carried out in a lawful manner. See, e.g., Brown v. Georgia, 294 S.E.2d 305, 308 (Ga. App. 1982) ("A police officer discharges his lawful duty when he arrests an individual who has committed a crime in his presence; i.e., the officer has reasonable and probable cause for such arrest."). The Court is unaware of any state or federal court holding that Georgia's obstruction statute does *not* require that the performance of an officer's duties be lawful.

8

The obstruction count of plaintiff's indictment charged him with obstructing defendants "in the lawful discharge of their official duties by fleeing from [defendants] when they attempted to arrest him pu[r]suant to a validly issued arrest warrant . . . ." Def. Ex. 4. If plaintiff had gone to trial on the obstruction charge, the State would have been required to prove that defendants performed their official duty, arresting plaintiff, in a lawful manner. In pleading guilty to the obstruction charge, plaintiff conceded that defendants performed their duties lawfully. Plaintiff's Section 1983 complaint challenges the lawfulness of defendants' performance of their duties. Because success in this action would require plaintiff to show that defendants performed their duties unlawfully, a showing that would negate an element of the obstruction charge and thus imply the invalidity of plaintiff's conviction, plaintiff's claim is barred by Heck. Plaintiff may only succeed in a Section 1983 action alleging excessive force if he is successful in collaterally attacking his underlying obstruction conviction. Because he has not done so, his complaint should be dismissed.[5]

## IV. CONCLUSION

For the reasons stated above, defendants' summary judgment motion should be **GRANTED**. This civil action should accordingly be **CLOSED** and judgment **ENTERED** in favor of defendants.

---

[5] In his complaint, plaintiff alleges, in addition to his excessive force claim, that defendants unlawfully entered his residence. Because plaintiff offers nothing to contradict defendants' factual assertions that they had permission from his wife to enter, or that they possessed an arrest warrant, the Court finds that this claim also fails and should be dismissed.

SO REPORTED and RECOMMENDED this 17th day of February, 2006, at Augusta, Georgia.

                                                         W. LEON BARFIELD
                                                     UNITED STATES MAGISTRATE JUDGE